THE STERN HAT CO. *v.* UNITED STATES (No. 4186)[1]

---

[1] C. A. D. 48.

United States Court of Customs and Patent Appeals, March 6, 1939

*Edwin D. Howald* for appellant.

*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

[Oral argument February 8, 1939, by Mr. Howald and Mr. Weeks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court (Third Division) affirming a judgment of the trial court in

fifteen appeals for reappraisement, which appeals were consolidated for the purposes of trial.

The merchandise involved consists of men's fur felt hats imported from Italy in the years 1930, 1931, and 1932. The first exportation was on December 17, 1930, reappraisement 105089–A; the last was on March 15, 1932, reappraisement 105104–A.

The merchandise was entered at the port of Cleveland, Ohio; it was appraised upon its United States value, as defined by section 402 (e) of the Tariff Act of 1930, the appraiser advancing the entered values. Appellant appealed to the Customs Court for reappraisement, claiming that the merchandise had no foreign, export, or United States value, and that it should be appraised upon the cost of production as defined in section 402 (f) of said tariff act.

Before the trial court both parties introduced evidence.

It appears that there had previously come before the court another appeal for reappraisement of fur felt hats exported from Italy by the same manufacturer to appellant on January 9, 1932, reappraisement 105101–A. In that case the appraiser, as in the cases at bar, had advanced the entered values, appraising the merchandise at its United States value.

All of the appeals for reappraisement here involved were before the trial court at the time said appeal involving the merchandise in the exportation of January 1932 was tried, but were suspended pending decision of said case tried by the court. However, no "duress" entries were involved. Upon the trial of that case the Government offered no evidence, and the trial court held that the evidence introduced by the importer established the lack of foreign, export, or United States value, and that the merchandise should be appraised upon the basis of its cost of production, which was done, Reap. Dec. 3459. Upon appeal the division affirmed the judgment of the trial court, Reap. Dec. 3631.

Upon the trial of the case at bar appellant called as a witness the appraiser at the port of Cleveland, who appraised all of the merchandise here involved and who had also appraised the merchandise involved in reappraisement 105101–A, which had been tried and decided as aforesaid. He testified in part as follows:

Q. You are familiar with all of these hats covered by the appeals which have now been called for trial?—A. Yes, sir.

Q. And, Mr. Spence, you were appraiser and were familiar with the hats covered by appeal No. 105101–A that was the original suspension case?—A. Yes, sir.

Q. Mr. Spence, will you state whether or not the conditions as to foreign market value, for export to the United States, and the U. S. value are the same in the pending cases as they were in the original case, 105101–A.—A. They were.

Q. And is the merchandise the same?—A. The same merchandise.

Mr. HOWALD. That is all.

Judge DALLINGER. Just a minute. I didn't quite understand the question and answer. In that test case you have referred to you found no foreign value and no export value?

The WITNESS. That is right.

Judge DALLINGER. And no U. S. value.

The WITNESS. We appraised on U. S. value.

Judge DALLINGER. And you say this merchandise is the same?

The WITNESS. The same identical merchandise.

Appellant offered in evidence the record in said reappraisement 105101–A, and it was admitted over the objection of the Government.

In addition to the above, the record in the case at bar contains the testimony of a translator and certain affidavits (Collective Exhibit 1) made by the president of the manufacturer company in Italy, purporting to show costs of production of the merchandise involved in each of the appeals for reappraisement.

The Government offered in evidence Exhibit 2, being a report of a Treasury attaché at Milan, Italy, which showed the absence of foreign value of the merchandise. The Government also offered in evidence Exhibit 3, which is a report of a customs agent at Cleveland. This report contains a general description of the various kinds of hats, the manufacturer's numbers of the hats, the appellant's order numbers under which it sold the hats in the United States and the dates thereof, the names of the purchasers, United States sale price per dozen hats, discount, quantity sold, date of exportation, date of entry, and date of delivery. Also, under the head of "Expense," the report lists "Ocean freight," "N. Y. C. Freight," and "Buyer's commission." The Government also introduced in evidence Collective Exhibit 4, being a report of a customs agent at Cleveland relating to profits and general expenses of appellant with respect to its hat business.

It appears that all of the hats described in said Exhibit 3 are involved in these appeals for reappraisement, except those hats which were involved in reappraisement 105101–A and certain other hats included in entry 2010, which entry the trial court stated was involved in reappraisement 105091–A, which is not before us.

Both the trial court and the appellate division found that, upon the record in the case at bar, United States value for all of the merchandise here involved had been established, and in effect affirmed the appraisements made by the local appraiser. From the judgment accordingly entered by the appellate division, appellant has taken this appeal.

Appellant, having offered no oral testimony in the case at bar to establish the absence of a United States value of the involved merchandise, other than that hereinbefore quoted, relies upon the incor-

porated record to establish a *prima facie* case overcoming the presumption of correctness of the appraisement made by the appraiser.

In the incorporated case both the trial court and the appellate division found the evidence established that there was no United States value for the hats therein involved, and the appellate division affirmed the cost of production found by the trial court.

It appears from the incorporated record that appellant does not carry in stock any hats of the character here involved, but sells only upon special orders for future delivery; that each order contains the particular specifications of the hats desired by each customer; that orders were sent by appellant to the manufacturer in Italy for hats according to the specifications stated in orders received by appellant, and that it required about three months from the dates of the orders to have the goods made up and delivered; in other words, the goods already sold would not be exported from Italy until about three months after their sale in the United States.

The testimony for appellant is that the goods are sold in the United States on the date the customer signs the order, and that all such orders are irrevocable, the customer agreeing at the time he places the order that he will accept delivery at the prices named thereon.

At the outset we are confronted with what seems to have been a mistake of fact, both by the Customs Court and the parties hereto. It seems to have been assumed that the appraised values of the hats here involved are the same as the United States values found by the local appraiser in the incorporated case. In that case there was a uniform sales price of all hats claimed to be prototype hats of $72 per dozen, and upon that basis all of the hats there involved were appraised at United States value, the appellate division finding, contrary to the finding of the trial court, that the hats involved were similar to the prototype hats. The appellate division in the case at bar refers to its decision in the incorporated case upon this point. Exhibit 3 shows that all of the hats involved in the incorporated case were also sold for $72 per dozen.

In the instant case the Government assumes that all of the appraisements here involved were made upon the same basis, viz, a United States selling price of $72 per dozen. It appears from the entry papers that this is not the fact, and that the appraised United States values of the hats here involved vary greatly, the range of advance over the entered value being from 20 to 45 per centum. To illustrate, while the United States selling price for the great majority of hats sold was found by the appraiser to be $72 per dozen, a United States selling price for some of the hats here involved was found to be $108 per dozen, and the United States value of such hats, as found by the appraiser, was accordingly greater.

It appears from Exhibit 3 that the hats valued upon the basis of a United States selling price of $108 per dozen were actually sold for that amount, and appellant's affidavits of cost of production show that said last-named hats cost more to produce than the hats appraised upon a United States selling price of $72 per dozen. While neither of these last-named facts has any direct bearing upon the United States value, these facts are relevant upon the question of similarity of such higher-priced hats to hats selling in this country for $72 per dozen, involved in the incorporated case. *United States* v. *Thomas & Co., etc.*, 21 C. C. P. A. (Customs) 254, T. D. 46788.

It would seem that if hats appraised at a higher value than were the hats in the incorporated case are not similar to such lower-priced hats, then there is no proof in the record of the absence of a United States value, of such hats rebutting the presumption of the correctness of the appraisement by the local appraiser.

Upon this point of similarity the appellate division stated:

The trial court in the test case, R. D. 3459, found that the merchandise previously purchased was not similar, as there was a difference in hats having the same item number. Upon appeal, R. D. 3631, this division found "the evidence establishes that the hats delivered in the fall of 1931, those delivered in February 1932, and those included in the shipment in the case at bar are 'similar' for the purposes of appraisement, the variations in specifications having been only as to minor details to conform to individual tastes, and the wholesale price in this country having been the same in the major portion of the sales." It was also established that when orders were taken for hats the contracts of sale were completely executed except for delivery. However, as there was no evidence of sales or offers for sale in this country of hats such as or similar to those involved therein upon the date of exportation, and because there was no evidence to establish that the actual amount of profit and general expenses equalled or exceeded the statutory allowance of 8 per centum, the United States value could not be ascertained and the appraiser in adopting a flat allowance of 8 per cent for profit and 8 per cent for general expenses acted contrary to law.

The evidence now before the court establishes, first, that the general expenses of the importing firm exceeded 8 per cent and that the profit of the firm derived from the sale of hats also exceeded 8 per cent. Second, that there were sales or offers for sale in the United States of such or similar merchandise at the time of export of the merchandise in question in each of the reappraisements before the court.

As hereinbefore indicated, according to Exhibit 3 and the notations in the entry papers, the United States sales price of the hats here involved ranged from $69 to $108 per dozen. The greater number of sales were made at $72 per dozen, but many sales were made at over $84 per dozen. In a reappraisement proceeding the facts upon which similarity of merchandise depends are for the Customs Court to determine, and we are not clear upon the point of whether the trial court and appellate division intended to hold, for instance, that hats valued by the local appraiser at $56.43 per dozen and selling for $108

per dozen were similar to hats valued at $34.69 per dozen and selling for $72 per dozen.

The Government contends that Exhibit 3 shows conclusively that sales of prototype merchandise were made by appellant very close to the time of the date of each exportation of merchandise here involved. In its brief it prints an appendix, assembled from Exhibit 3, showing what it claims to be a prototype sale of hats about the time of each exportation of merchandise here involved. If the sales so relied upon were in fact sales of prototype merchandise, we should agree that United States value had been established, insofar as the merchandise here involved is similar to the merchandise involved in the incorporated case. We assume that the appellate division and trial court regarded sales of similar merchandise for future delivery, made on or about the time of the exportation of merchandise here involved, as a proper basis of arriving at United States value of the involved merchandise. This is the Government's theory. However, the statute, section 402 (e) of the Tariff Act of 1930, requires the prototype merchandise to be imported merchandise. None of the sales upon which the Government relies to furnish a basis for ascertaining United States value of the involved merchandise were of imported merchandise. To illustrate, the Government relies upon a sale of hats bearing the manufacturer's number 9865 on July 7, 1931, in the amount of 4½ dozen, to R. H. Macy at $74 per dozen as a sale of prototype hats for other hats bearing the same manufacturer's number exported on July 11, 1931, or four days after the sale to Macy of July 7, 1931; but this last sale to Macy was not of imported merchandise. Turning to Exhibit 3 we find the hats sold to Macy on July 7, 1931, were not in fact imported until September 23, 1931.

It is only the sale of merchandise imported previous to the dates of exportation of the merchandise being appraised that can be resorted to as a basis for arriving at the United States value of such merchandise.

In the case of *United States* v. *Sheldon & Co.*, 23 C. C. P. A. (Customs) 245, T. D. 48108, speaking of United States value of imported merchandise, we said:

The conclusion of the division as to the method of ascertainment of United States value must be the correct one, under the language of section 402 (e) of said tariff act. The said value is the price at which such or similar imported merchandise is *freely offered for sale*, packed, in the principal market of the United States, to all purchasers, *at the time of exportation* of the merchandise which is being valued. This could, of course, be established only by such or similar goods which had been previously imported and were being freely offered for sale at the time of export of the goods being valued. [Italics quoted.]

The correctness of this view is well illustrated in the case before us. The Government undertakes to select as prototype merchandise in the illustration above given the very merchandise involved in one of

the reappraisement appeals before us, the entry of which has not been liquidated by the collector, and the duty upon which cannot be determined until after the determination of this appeal. This is true of all of the so-called prototype merchandise relied upon by the Government, except that involved in the incorporated case, all·of which was exported on January 9, 1932, and the merchandise in entry 2010, the reappraisement of which, it appears, is still pending in another case before the Customs Court.

So far as Exhibit 3 is concerned, we find no sales of previously imported merchandise made on or about the time of the exportation of the merchandise involved in these appeals.

It follows from the foregoing that, as to any merchandise here involved that is similar to the merchandise involved in the incorporated case, there is no substantial evidence in the record of the United States value of such merchandise, and upon the record no United States value can be sustained unless it should be held that, even as to such merchandise, appellant did not establish a *prima facie* case showing absence of such United States value. We assume, however, that as to such merchandise the appellate division did find that appellant's evidence as a whole, including that in the incorporated case, was sufficient to overcome the presumption of the correctness of the appraisement of such merchandise made by the appraiser, for the whole tenor of its decision so indicates. To the extent that such implied finding relates to merchandise similar to that involved in the incorporated case, we think there is some warrant for such conclusion. However, it may be that the appellate division did not fully consider this question, inasmuch as it may have regarded that the evidence introduced by the Government established a United States value of the merchandise, and disregarded any deficiencies in appellant's proof as to absence of United States value, the Government having made no motion before the trial court to dismiss appellant's appeal to reappraisement for lack of proof of absence of United States value. We would note in this connection that the trial court found both a United States value upon the evidence in the record, and also found that the presumption of correctness of the appraisement by the local appraiser had not been rebutted.

Inasmuch as we cannot affirm the judgment appealed from and the cause must be remanded, we have concluded that the judgment should be *reversed* and the cause *remanded* to the appellate division for reconsideration upon all of the issues here involved, in accordance with the views expressed herein, and it is so ordered.